# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF ALABAMA

IN RE:

DANIEL L. BAILEY | CHAPTER 13
CASE NO. 14-81618

    Debtor(s)

## MOTION TO LIFT THE AUTOMATIC STAY

    Comes now CitiFinancial Servicing, LLC ("CitiFinancial Servicing, LLC"), and moves this Court, pursuant to 11 U.S.C. § 362, for an order lifting the automatic stay on certain property which is currently subject to an interest held by CitiFinancial Servicing, LLC and shows unto the Court the following:

    1.    CitiFinancial Servicing, LLC is a secured creditor of the above-named Debtor(s) being the holder and owner of a certain note in the original principal amount of $33,090.86, executed by Debtor(s), and payable to the order of CitiFinancial Corporation, LLC, and is secured by a mortgage on certain real estate located at 1904 18TH STREET SW, LANETT, AL 36863 in Chambers County, Alabama, as evidenced by the attached instruments.

    2.    CitiFinancial Servicing, LLC avers that Debtor(s) has/have been in default in the payment of the post-petition installments due CitiFinancial Servicing, LLC, as assignee of said note and mortgage, pursuant to the terms of said note, since August 2015 and thereafter.

| Number of Missed Payments | From | To | Missed Principal and Interest | Missed Escrow (if applicable) | Monthly Payment Amount | Total Amounts Missed |
|---|---|---|---|---|---|---|
| 1 | Aug 2015 | Aug 2015 | $353.36 | $0.00 | $353.36 | $353.36 |
| 7 | Sep 2015 | Mar 2016 | $353.92 | $0.00 | $353.92 | $2477.44 |
| Less postpetition partial payments (suspense balance): | | | | | ($0.00) | |
| | | | | | Total | $2830.80 |

    3.    CitiFinancial Servicing, LLC holds and/or services the loan on the property referenced in this Motion for Relief. In the event the automatic stay in this case is modified, this case dismisses,

and/or the debtor obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of CitiFinancial Servicing, LLC ("Noteholder").

      4.      Noteholder directly or through an agent, has possession of the promissory note. The promissory note is either made payable to Noteholder or has been duly endorsed. Noteholder is the original mortgagee or beneficiary or the assignee of the security instrument for the referenced loan.

      5.      Once relief has been granted, CitiFinancial Servicing, LLC will no longer file any additional Payment Change Notification or Post Petition Fee Notification in conjunction with the aforementioned loan in the case of the entry of the relief order in conjunction with the loan, and is exempted from further compliance with Fed. Rule, BK. P. 3002.1 in this case.

WHEREFORE, CitiFinancial Servicing, LLC respectfully requests that the Court issue an order stating that the automatic stay is lifted pursuant to 11 U.S.C. § 362, and said property be released to CitiFinancial Servicing, LLC to permit it to liquidate its security and to apply the proceeds to said indebtedness secured thereby, that the court award the costs and fees associated with this Motion to the Movant, and to such other relief to which it may be entitled.

By: /s/ Michael Lindsey  
Michael Lindsey  
Jauregui & Lindsey, LLC  
244 Inverness Center Dr  
Ste 200  
Birmingham, AL 35242  
(205) 970-2233

## **CERTIFICATE OF SERVICE**

  I hereby certify that a copy of the foregoing has been served upon the following using the CM/ECF System, on April 11, 2016, to-wit:

Brian R. Carmichael
P.O. Box 122
Opelika, AL 36803
broy@carmichaellawgroup.com

Curtis C. Reding
P. O. Box 173
Montgomery, AL 36101

And by United States Mail, postage prepaid and properly addressed to:

Daniel Lewis Bailey
1904 18TH STREET SW
LANETT, AL 36863

                 By: /s/ Michael Lindsey
                 Michael Lindsey

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

IN RE:

DANIEL L. BAILEY

    Debtor(s)

CHAPTER 13
CASE NO. 14-81618

AFFIDAVIT SUPPORTING MOTION FOR RELIEF FROM AUTOMATIC STAY

STATE OF KENTCUKY   )
                                  ) ss.
COUNTY OF BOONE     )

Before me, the undersigned authority, personally appeared the person identified below, who being by me duly sworn, deposed as follows:

1. My name is Destiny D. Walden. I am of sound mind, lawful age and capable of making this Affidavit. The statements set forth in this Affidavit are true and correct based on my personal knowledge and review of the business records described herein.

2. I am employed by CitiMortgage, Inc., as a Vice President - Document Control and I have been appointed as a Vice President of CitiFinancial Servicing LLC, a Delaware limited liability company, successor by merger to CitiFinancial Corporation, LLC, a Delaware limited liability company. Pursuant to an agreement, CitiMortgage, Inc., provides certain loan servicing activities CitiFinancial Servicing LLC, a Delaware limited liability company, successor by merger to CitiFinancial Corporation, LLC, a Delaware limited liability company, its Successors and/or Assigns ("Movant"). I am authorized to make this Affidavit on behalf of Movant pursuant to the corporate resolutions of Movant. This Affidavit is submitted in support of the motion seeking relief from the automatic stay (the "Motion").

3. In my capacity as Vice President - Document Control, I am familiar with the books of account and have examined all books, records, and documents kept concerning the transaction alleged in the Motion. All of these books, records, and documents are kept in the regular course of business and are made at or near the time of the transaction using information transmitted by persons with personal knowledge of the facts. It is the regular

AL-Middle District – Affidavit Supporting MFR – Non CMI – 20150305

v.AL20150305

practice to make and keep these books, records and documents. All of these books, records, and documents are managed by employees or agents whose duty it is to keep the books, records, and documents accurately and completely.

4. My responsibilities include, but are not limited to, handling bankruptcy accounts and ascertaining amounts due and payable.

5. I have personal knowledge of the facts contained in this Affidavit. Specifically, I have reviewed and have personal knowledge of the records related to the loan account associated with the certain property described as 1904 18TH STREET SW, LANETT, AL 36863.

6. True and correct copies of the Note and Mortgage are attached hereto as Exhibits A and B, respectively, and incorporated herein by reference. Movant is the current holder of the Mortgage.

7. As of March 25, 2016, there are one or more defaults in paying Debtor(s) post-petition amounts due with respect to the Note.

8. As of the date hereof, the principal balance owed by the Debtor(s) to Movant is $25,317.63, plus advances made, attorney fees, costs, other fees and charges, and interest accruing thereon in accordance with the loan documents.

9. The following chart sets forth those postpetition payments, due pursuant to the terms of the Note, that have been missed by the Debtor(s) as of March 25, 2016:

| Number of Missed Payments | From | To | Missed Principal and Interest | Missed Escrow (if applicable) | Monthly Payment Amount | Total Amounts Missed |
|---|---|---|---|---|---|---|
| 1 | 08/10/2015 | 08/10/2015 | $353.36 | $0.00 | $353.36 | $353.36 |
| 7 | 09/10/2015 | 03/10/2016 | $353.92 | $0.00 | $353.92 | $2,477.44 |
| Less postpetition partial payments (suspense balance): | | | | | | ($0.00) |

Total: **$2,830.80**

10. As of March 25, 2016, the total postpetition arrearage/delinquency is $2,830.80, consisting of (i) the foregoing total of missed postpetition payments in the amount of $2,830.80, plus (ii) the following postpetition fees and advances for taxes and insurance:

| Description | Amount |
|---|---|
| N/A | $0.00 |
| N/A | $0.00 |

11. Attached hereto as Exhibit C is a postpetition payment history.

I solemnly affirm under the penalty of perjury and upon personal knowledge that the contents of the foregoing paper are true.

EXECUTED on __March 31__, __2016__.

By: *Destiny D. Walden*

Name: Destiny D. Walden

STATE OF __Kentucky__ )
) ss.
COUNTY OF __Boone__ )

Subscribed and sworn to me the undersigned authority on this __31__ day of __March__, 20__16__.

My Commission Expires: __6/18/2016__

*Michelle Roark*

Notary Public in and for the
State of __KY__

**MICHELLE ROARK**
Notary Public, ID #468740
State at Large, Kentucky
My Commission Expires June 18, 2016

# Exhibit A

# Disclosure Statement, Note and Security Agreement

| Borrower(s) (Name and mailing address) | Lender (Name, address, city and state) | Account No. |
|---|---|---|
| DANIEL L BAILEY<br>1902 18TH STREET SW<br>LANETT AL 36863 | CITIFINANCIAL<br>CORPORATION, LLC<br>2412 PEPPERELL PKWY A5<br>OPELIKA AL 36801 | ▮4347<br>Date of Loan<br>03/25/2003 |

| ANNUAL PERCENTAGE RATE<br>The cost of Borrower's credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost Borrower. | Amount Financed<br>The amount of credit provided to Borrower or on Borrower's behalf. | Total of Payments<br>The amount Borrower will have paid after Borrower has made all payments as scheduled. |
|---|---|---|---|
| 11.25 % | $ 40,072.64 | $ 32,127.04 | $ 72,199.68 |

**Payment Schedule:**

| Number of Payments | Amount of Payments * | When Payments Are Due |
|---|---|---|
| 204 | $ 353.92 | MONTHLY BEGINNING 04/30/2003 |
| | $ | |
| | $ | |
| | $ | |

See the contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

**Security:** If checked, Borrower has a security interest in:
☐ Motor Vehicle  ☐ Mobile Home
☒ Real Property  ☐ Other:

**Late Charge:** If a payment is in default 10 days or more after the scheduled payment date, Borrower will be charged 5.0 % of the unpaid amount of the payment or $ 10.00, whichever is more, but in no event to exceed $ 100.00.

**Prepayment:** If Borrower pays off early, Borrower will not have to pay a penalty and will not be entitled to a refund of part of the finance charge.

* Does not include any insurance premium.

**Additional Information:**

| Total amount of first month's payment including insurance premiums, if any. | PRINCIPAL AMOUNT | POINTS | DATE CHARGES BEGIN |
|---|---|---|---|
| $ 353.92 | $ 33,090.86 | $ 963.82 | 03/31/2003 |

**Required Insurance Disclosure:**
If Borrower grants Lender a security interest as indicated in this document, insurance to protect the Lender's interest in the collateral may be required. If this loan is secured by real property, or mobile/manufactured home, then fire, extended coverage, collision and/or comprehensive casualty insurance is required naming Lender as loss payee, until the loan is fully paid. The amount of such insurance must be sufficient to satisfy the unpaid balance of the loan, or be equal to the value of the collateral, whichever is less. Such insurance may be provided through an existing policy or a policy obtained independently and purchased by Borrower. Borrower may obtain such insurance from any insurer that is reasonably acceptable to Lender.

**Optional Insurance Disclosure:**
Borrower is not required to purchase optional insurance products, such as: Credit Life, Credit Disability, Involuntary Unemployment Insurance or any other optional insurance products. Lender's decision to grant credit will not be affected by Borrower's decision to purchase or decline to purchase optional insurance.

Coverage will not be provided unless Borrower signs and agrees to pay the applicable monthly premium in addition to the monthly loan payment disclosed above.

Borrower should refer to the terms contained in the applicable certificate or policy of insurance issued for the exact description of benefits, exclusions and premium rates.

If Borrower purchases insurance, Borrower's monthly payment will include both the monthly loan payment disclosed above and the applicable monthly premiums.

I/We request the following insurance:

| Premium Due with the First Month's Loan Payment | First Year's Premium * | Insurance Type: | First Borrower's Signature | Date |
|---|---|---|---|---|
| $NONE | $ | | *Daniel J. Bailey* | 3/25/03 |
| $NONE | $ | | | |
| $NONE | $ | | Second Borrower's Signature | Date |

(* First year's premiums are calculated on the assumption that monthly loan payments are timely made). Accrued but unpaid premium, if not paid earlier, will be due and payable at the time of the final payment on the loan. However, failure to pay premiums may result in termination of insurance as described below.

**Termination of Insurance:**
Borrower may cancel any of the optional insurance products offered at any time. The optional insurance will terminate upon the earliest of the following occurrences:
(1) the Lender's receipt of Borrower's written request for termination;
(2) on the date when the sum of past due premiums equal or exceed four times the first month premium;
(3) termination pursuant to the provisions of the insurance certificate;
(4) payment in full of Borrower's Loan;
(5) death of Borrower.

**TERMS:** In this Disclosure Statement, Note and Security Agreement, the word "Borrower" refers to the persons signing below as Borrower, whether one or more. If more than one Borrower signs, each will be responsible, individually and together, for all promises made and for repaying the loan in full. The word "Lender" refers to the Lender, whose name and address are shown above.

**PROMISE TO PAY:** In return for a loan that Borrower has received, Borrower promises to pay to the order of Lender the Principal amount shown above, plus interest on the unpaid Principal balance from the Date Charges Begin shown above at the rate of interest of 10.7556 % per annum. Lender will compute interest on the unpaid Principal balance on a daily basis from the date charges begin until Borrower repays the loan. If Borrower does not make sufficient or timely payments according to the payment schedule above, Borrower will incur greater interest charges on the loan. On the N/A month anniversary of the Date of Loan shown above, the rate of interest applicable to the remaining unpaid principal balance shall decrease to N/A % per annum.

Any amount shown above as Points has been paid by Borrower as Points. This amount is considered a prepaid charge and is in addition to interest calculated at the above Rate(s) of Interest. Any Points are earned prior to any other interest on the loan balance. In the event of prepayment of the loan, prepaid Points will not be refundable to Borrower.

(Intentionally left blank)

Borrower's Initials: *DB* *DB*

CitiFinancial Corporation, LLC
AL 25738-17 2/2003    Original(Branch)    Copy (Customer)    Page 1 of 3

Principal and interest shall be payable in the monthly installments shown above, except that any appropriate adjustments will be made to the first and final payments, beginning on the first payment date shown above and continuing on the same day in each following month until paid in full unless this loan is subject to a call provision as indicated, in which event the final payment date may be accelerated. Upon the final payment date or the acceleration thereof, the entire outstanding balance of Principal and interest evidenced by this Disclosure Statement, Note and Security Agreement shall be due and payable. Any payment(s) which Lender accepts after the final payment date or the acceleration thereof do not constitute a renewal or extension of this loan unless Lender so determines.

Each payment shall be applied as follows: (1) monthly loan payments due (first to interest, then principal), (2) insurance premiums due, (3) unpaid interest to the date of payment, if any, then (4) principal. Lender may collect interest from and after maturity upon the unpaid Principal balance at the maximum rate permitted under the then applicable law or the rate of interest prevailing at the time of maturity under this Disclosure Statement, Note and Security Agreement.

PREPAYMENT: Borrower may prepay this loan in whole or in part at any time without penalty. However, upon partial prepayment, interest will continue to accrue on any remaining Principal balance. Partial prepayment and the application of a Refund to the unpaid balance of the loan will not affect the amount or due date of subsequent scheduled payments on the loan, but may reduce the number of such payments.

SECURITY AGREEMENT:

A. To protect Lender if Borrower defaults on this loan, Borrower gives to Lender a security interest under the Uniform Commercial Code in any property for which a description is completed below and all parts and equipment now or later added to the property and any proceeds of the property, all of which will be called "Property". See below for additional terms applicable to this security interest.

1. Motor vehicle/mobile home:

| Make, No. Cylinders | Year/Model | Model No. Or Name | Body Type | Identification Number |
|---|---|---|---|---|
|  |  |  |  |  |

2. Other Property:

B. If this line is completed, the loan is secured by either a Deed of Trust or a Mortgage on real property located at
1902 18TH STREET SW      LANETT AL 36863                                    . See either the Deed of Trust or the Mortgage for terms applicable to Lender's interest in Borrower's real property ("Property").

OWNERSHIP OF PROPERTY: Borrower represents that the Property is owned by Borrower free and clear of all liens and encumbrances except those of which Borrower has informed Lender in writing. Prior to any default, Borrower may keep and use the Property at Borrower's own risk, subject to the provisions of the Uniform Commercial Code. If the Property includes a motor vehicle or a mobile home, Borrower will, upon request, deliver the certificate of title to the motor vehicle or mobile home to Lender.

USE OF PROPERTY: Borrower will not sell, lease, encumber, or otherwise dispose of the Property without Lender's prior written consent. Borrower will keep the Property at Borrower's address (as shown on page 1) unless Lender has granted permission in writing for the Property to be located elsewhere. The Property will be used only in the state in which Borrower lives unless the Property is a motor vehicle, in which case it will be used outside the state only in the course of Borrower's normal use of the Property. Borrower will not use or permit the use of the Property for hire or for illegal purposes.

TAXES AND FEES: Borrower will pay all taxes, assessments, and other fees payable on the Property, this Disclosure Statement, Note and Security Agreement, or the loan. If Borrower fails to pay such amounts, Lender may pay such amounts for Borrower and the amounts paid by Lender will be added to the unpaid balance of the loan.

INSURANCE: If the original amount of the loan is $300.00 or more, not including insurance charges, and if the Property includes a motor vehicle or a mobile home worth $300.00 or more, Borrower will keep the motor vehicle or mobile home insured with collision and comprehensive casualty insurance, as required by Lender, protecting Lender and Borrower as their interests may appear, for the amount of the unpaid balance of the loan or the value of the motor vehicle or mobile home, whichever is less, until the loan is fully paid. If Borrower purchases any insurance at Lender's office, Borrower understands and acknowledges that (1) the insurance company may be affiliated with Lender, (2) Lender's employee(s) may be an agent for the insurance company, (3) such employee(s) is not acting as the agent, broker or fiduciary for Borrower on this loan, but may be the agent of the insurance company, and (4) Lender or the insurance company may realize some benefit from the sale of that insurance. If Borrower fails to obtain or maintain any required insurance or fails to designate an agent through whom the insurance is to be obtained, Lender may purchase such required insurance for Borrower through an agent of Lender's choice, and the amounts paid by Lender will be added to the unpaid balance of the loan.

FINANCING STATEMENTS: Borrower will sign all financing statements, continuation statements, security interest filing statements, and similar documents with respect to the Property at Lender's request.

LATE CHARGE: Borrower understands that there is a charge for late payments as shown in the Disclosure Statement on page 1 of this Disclosure Statement, Note and Security Agreement.

NSF CHECKS: Lender may charge the greater of either a $ 20.00 fee or an amount equal to the actual charge by the depository institution if a check, draft, negotiable order of withdrawal or like instrument is not paid or is dishonored.

LOAN CHARGES: If a law that applies to this loan and that sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then (i) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit, and (ii) any sums already collected from Borrower that exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under this loan or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge.

DEFAULT: Borrower will be in default if:
1. Borrower does not make any scheduled payment on time;
2. Borrower is (or any other person puts Borrower) in bankruptcy, insolvency or receivership;
3. Any of the Borrower's creditors attempts by legal process to take and keep any property of Borrower, including the Property securing this loan;
4. Borrower fails to fulfill any promise made under this agreement; or
5. A default occurs under any Real Estate Mortgage or Deed of Trust which secures this loan or under any other mortgage or deed of trust or the real property.

If Borrower defaults, Lender may require Borrower to repay the entire unpaid balance and any accrued interest at once. If the debt is referred for collection to an attorney who is not Lender's employee, and the original amount financed is over $300.00, Borrower agrees to pay reasonable attorney's fees not to exceed 15% of the unpaid balance upon default, and court costs.

EFFECTS OF DEFAULT: If Borrower defaults, Borrower will deliver the Property to Lender or, upon Lender's demand, assemble the Property and make it available to Lender at a reasonably convenient place. Lender may, without previous notice or demand and without legal process, peacefully enter any place where the Property is located and take possession of it.

The Property may be sold with notice at a private or public sale at a location chosen by Lender. At such a sale, Lender may purchase the Property. The proceeds of any sale, minus the expenses incurred in collecting on the debt, will be credited to the unpaid balance of Borrower's loan. The expenses that will be deducted from the proceeds of the sale include: the costs of taking, removing, holding, repairing, and selling the Property; fees (if the original amount of the loan is $300.00 or more) not to exceed 15% of the unpaid balance paid to an attorney who is not Lender's salaried employee; and the costs of removing any superior liens or claims on the Property. If Borrower has left other property in the repossessed Property, Lender may hold such property temporarily for Borrower without any responsibility or liability for the property.

CitiFinancial Corporation, LLC
AL 25738-17 2/2003      Original (Branch)     Copy (Customer)

Borrower's Initials: _____ DcB

Page 2 of 3

Case 14-81618   Doc 21   Filed 04/11/16   Entered 04/11/16 14:54:12   Desc Main
                Document       Page 9 of 18

DANIEL L BAILEY █████████ █████████ ████4347 03/25/2003

If the proceeds of sale are not sufficient to satisfy the unpaid balance, earned interest, and expenses, subject to applicable Alabama law, Borrower agrees to pay the remaining amount upon demand.

Notice of the time and place of a public sale or notice of the time after which a private sale will occur is reasonable if mailed to the Borrower's address at least five days before the sale. The notice may be mailed to Borrower's last address shown on Lender's records.

LAW THAT APPLIES: Alabama law and federal law, as applicable, govern this Disclosure Statement, Note and Security Agreement. If any part is unenforceable, this will not make any other part unenforceable. In no event will Borrower be required to pay interest or charges in excess of those permitted by law.

OTHER RIGHTS: Lender may accept payments after maturity or after a default without waiving its rights with respect to any subsequent default in payment. Lender may waive any late charge or portion thereof without waiving its right to require a late charge with regard to any other late payment. Borrower agrees that Lender may extend time for payment after maturity without notice. The terms of this agreement can be waived or changed only in a writing signed by Lender.

Where the context requires, singular words may be read in the plural and plural words in the singular. References to the masculine gender may be read to apply to the feminine gender.

OTHER TERMS: Each Borrower under this Disclosure Statement, Note and Security Agreement, if more than one, agrees that Lender may obtain approval from one Borrower to change the repayment terms and release any Property securing the loan, or add parties to or release parties from this agreement, without notice to any other Borrower and without releasing any other Borrower from his responsibilities. Lender does not have to notify Borrower before instituting suit if the note is not paid, and Lender can sue any or all Borrowers upon the default by any Borrower.

Borrower, endorsers, sureties and guarantors, to the extent permitted by law, severally waive their right to require Lender to demand payment of amounts due, to give notice of amounts that have not been paid, to receive notice of any extensions of time to pay which Lender allows to any Borrower and to require Lender to show particular diligence in bringing suit against anyone responsible for repayment of this loan, and additionally, waive benefit of homestead and exemption laws now in force or later enacted, including stay of execution and condemnation, on any Property securing this loan and waive the benefit of valuation and appraisement.

This Disclosure Statement, Note and Security Agreement shall be the joint and several obligation of all makers, sureties, guarantors and endorsers and shall be binding upon them, their heirs, successors, legal representatives and assigns.

If any part of the Disclosure Statement, Note and Security Agreement and, if applicable, the Mortgage or Deed of Trust and accompanying Itemization of Amount Financed and Arbitration Agreement is unenforceable, this will not make any other part unenforceable.

REFINANCING: The overall cost of refinancing an existing loan balance may be greater than the cost of keeping the existing loan and obtaining a second loan for any additional funds Borrower wishes to borrow.

ARBITRATION. Borrower, Non-Obligor(s) (if any) and Lender have entered into a separate Arbitration Agreement on this date, the terms of which are incorporated and made a part of this Disclosure Statement, Note and Security Agreement by this reference.

The following notice applies only if this box is checked. ☐

NOTICE

ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

By signing below, Borrower agrees to the terms contained herein, acknowledges receipt of a copy of this Disclosure Statement, Note and Security Agreement and, if applicable, the Mortgage or Deed of Trust and of the accompanying Itemization of Amount Financed and Arbitration Agreement, and authorizes the disbursements stated therein.

CAUTION—IT IS IMPORTANT THAT YOU THOROUGHLY READ THIS CONTRACT BEFORE YOU SIGN IT.

WITNESSES: _____  SIGNED: _____ (Seal)
             _____           DANIEL L BAILEY        -Borrower
                                     _____ (Seal)
                                                            -Borrower
             _____  _____ (Seal)
                                                            -Borrower

             CITIFINANCIAL CORPORATION, LLC
             By: _____
             (Name and Title)                 03/25/2003 16:12:45

SECURITY INTEREST OF NONOBLIGOR: Borrower only is personally liable for payment of the loan. Nonobligor is liable and bound by all other terms, conditions, covenants, and agreements contained in this Disclosure Statement, Note and Security Agreement, including but not limited to the right and power of Lender to repossess and sell the Property securing this loan, in the event of default by Borrower in payment of this loan.

_____ (Seal) _____  _____ (Seal) _____
Signature                      Date              Signature                     Date

# Exhibit B

After recording return to:
CITIFINANCIAL
CORPORATION, LLC
2412 PEPPERELL PKWY A5
OPELIKA AL 36801

CHAMBERS COUNTY, ALABAMA     REC $20.25     MTG $49.65     03/19/2003     #2003-1350
JOHN T. CROWDER, PROBATE JUDGE                                          10:55:59AM      1 OF 4

# MORTGATE

    THIS MORTGAGE is made this    17th   day of      March            , 2003      , between the Grantor,
DANIEL LEWIS BAILEY, A SINGLE MAN

                                                                                                                                                                          (herein "Borrower"),

and the Mortgagee,    CITIFINANCIAL CORPORATION, LLC
a corporation organized and existing      under the laws of      Delaware                   , whose address
is 2412 PEPPERELL PKWY A5    OPELIKA AL 36801                             (herein "Lender").

    WHEREAS, Borrower is indebted to Lender in the principal sum of U.S. $         33,089.28       ,
which indebtedness is evidenced by Borrower's note dated      03/17/2003          and extensions and renewals
thereof (herein "Note"), providing for monthly installments of principal and interest, with the balance of the
indebtedness, if not sooner paid, due and payable on    04/21/2018   ;

    TO SECURE to Lender the repayment of the indebtedness evidenced by the Note, with interest thereon; the payment
of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Mortgage; and the
performance of the covenants and agreements of Borrower herein contained, Borrower does hereby grant and convey to
Lender and Lender's successors and assigns with power of sale, the following described property located in the County of
CHAMBERS                , State of Alabama:

         LOT NUMBER 88 AS SHOWN ON PLAT OF W.E BARROW ESTATE LOCATED IN SECTION
         35,TOWNSHIP 22,RANGE 26,CHAMBERS COUNTY,ALABAMA,AT LAFAYETTE,ALABAMA.
         SAID PROPERTY BEING BOUNDED AS FOLLOWAS; EAST BY GEORGE WASHINGTON
         PROPERTY, ON THE SOUTH BY OLD LAFAYETTE ROAD,ON WEST BY W.E BARROWS
         ESTATE,AND ON THE NORTH BY LANDS FORMERY OWNED BY RENDER FULLER.

2. **Funds for Taxes and Insurance.** Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Mortgage and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage and deed of trust if such holder is an institutional lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Mortgage that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Mortgage.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Mortgage, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Mortgage.

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

4. **Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Mortgage, and leasehold payments or ground rents, if any.

5. **Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage", and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Mortgage.

6. **Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Mortgage is on a leasehold. If this Mortgage is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

7. **Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this

10. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Mortgage granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

11. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Mortgage, but does not execute the Note, (a) is co-signing this Mortgage only to mortgage, grant and convey that Borrower's interest in the Property to Lender under the terms of this Mortgage, (b) is not personally liable on the Note or under this Mortgage, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forebear, or make any other accommodations with regard to the terms of this Mortgage or the Note without that Borrower's consent and without releasing that Borrower or modifying this Mortgage as to that Borrower's interest in the Property.

12. **Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Mortgage shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the U. S. Postal address of the Property or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Mortgage shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

13. **Governing Law; Severability.** The state and local laws applicable to this Mortgage shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of Federal law to this Mortgage. In the event that any provision or clause of this Mortgage or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Mortgage and the Note are declared to be severable. As used herein, "costs", "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

14. **Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Mortgage at the time of execution or after recordation hereof.

15. **Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

16. **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Mortgage. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Mortgage.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Mortgage. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Mortgage without further notice or demand on Borrower.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. **Acceleration; Remedies.** Except as provided in paragraph 16 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Mortgage, including the covenants to pay when due any sums secured by this Mortgage, Lender prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage and sale of Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the nonexistence of a default or any other defense of Borrower to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender at Lender's option may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees.

If Lender invokes the power of sale, Lender shall mail a copy of a notice of sale to Borrower in the m-



continue unimpaired. Upon such payment and cure by Borrower, this Mortgage and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

**19. Assignment of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver, shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collections of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Mortgage. Lender and the receiver shall be liable to account only for those rents actually received.

**20. Release.** Upon payment of all sums secured by this Mortgage, this Mortgage shall become null and void and Lender shall release this Mortgage without charge to Borrower. Borrower shall pay all costs of recordation, if any.

**21. Waiver of Homestead, Dower and Curtesy.** Borrower hereby waives all rights of homestead exemption in the Property and relinquishes all right of dower and curtesy in the Property.

**22. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 22, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 22, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

---
**REQUEST FOR NOTICE OF DEFAULT
AND FORECLOSURE UNDER SUPERIOR
MORTGAGES OR DEEDS OF TRUST**
---

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Mortgage to give Notice to Lender, at Lender's address set forth on page one of this Mortgage, with a copy to P. O. Box 17170, Baltimore, MD 21203, of any default under the superior encumbrance and of any sale or other foreclosure action.

IN WITNESS WHEREOF, Borrower has executed this Mortgage.

Signed, sealed and delivered in the presence of :

_____    _Daniel Lewis Bailey_____ (Seal)
                                                                      -Borrower

_____    _____ (Seal)
                                                                      -Borrower

STATE OF ALABAMA, __CHAMBERS_____ County ss:

On this __17TH__ day of __MARCH__, 2003, I, DANIELLE BENTON a Notary Public in and for said county and in said state, hereby certify that DANIEL BAILEY, A SINGLE MAN _____, whose name(s) __IS__ signed to the foregoing conveyance, and who __IS__ known to me, acknowledged before me that, being informed of the contents of the conveyance, __he__ executed the same voluntarily and as DANIELLE BAILEY, A SINGLE MAN act on the day the same bears date.

Given under my hand and seal of office this the __17TH__ day of __MARCH__ 2003
My Commission Expires

# Exhibit C

## PAYMENT HISTORY

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | Name | Daniel L. Bailey | | | | | |
| | | Mort. Comp. | CITIFINANCIAL SERVICING LLC | | Principal Balance: | | $25,317.63 | |
| | | Case Number | 14-81618 | | | | | |
| | | Date Filed | 12/5/2014 | | | | | |
| | | Due For | 09/10/15 (Partial Payment) | | | | | |
| Loan History: Begin loan history from the date of the filing | | | | | | | | |
| Date Completed: | | 3/25/2016 | | | CHARGES | | | |
| Date | Monthly Payment Due | Amount Received from Debtor | Applied to Interest | Applied to Balance | Monthly Amount Due Escrow | Amount Due Other Charges | Applied to Date | Description of Charges |
| 4/13/2015 | $353.92 | $354.00 | $354.00 | $0.00 | $0.00 | $0.00 | 1/10/2015 | |
| 4/13/2015 | $353.92 | $354.00 | $354.00 | $0.00 | $0.00 | $0.00 | 2/10/2015 | |
| 5/27/2015 | $353.92 | $354.00 | $354.00 | $0.00 | $0.00 | $0.00 | 3/10/2015 | |
| 7/7/2015 | $353.92 | $354.00 | $354.00 | $0.00 | $0.00 | $0.00 | 4/10/2015 | |
| 9/12/2015 | $353.92 | $708.00 | $542.35 | $165.65 | $0.00 | $0.00 | 5/10/2015 | |
| 3/10/2016 | $353.92 | $354.00 | $354.00 | $0.00 | $0.00 | $0.00 | 7/10/2015 | |
| | | | | | | | | |
| Totals | | $2,478.00 | $2,312.35 | $165.65 | $0.00 | $0.00 | | |
| | | (a) | (b) | (c) | (d) | (f) | | |
| | | | | | | | | |
| Due for Dates: | | | | | | 09/10/15 - 03/10/16 | | |
| Monthly Payment amount | | | | | | $353.92 | | |
| Number of Missed payments | | | | | | 7 | | |
| Partial Payment amount | | | | | 8/10/2015 | $353.36 | | |
| Amount Account is due for | | | | | | $2,830.80 | | |
| Interest Rate | | | | | | | | |
| Escrow Balance (amount held for payment of taxes, insurance, etc.) | | | | | | $0.00 | | |

## Standing Statement

CitiFinancial Servicing LLC ("Movant"), directly or through an agent, has possession of the original promissory note. The promissory note either is made payable to Movant or the note has been duly endorsed to a predecessor of Movant. Movant is the current mortgagee of the mortgage securing the referenced loan.